1

1          UNITED STATES DISTRICT COURT
        FOR THE DISTRICT OF MASSACHUSETTS

2

                                        Criminal No.
3                                       04-10319-WGY

4

    * * * * * * * * * * * * * * * * *
5                                   *

    UNITED STATES OF AMERICA        *
6                                   *   TRIAL TRANSCRIPT
    v.                              *      (Excerpts)
7                                   *      (Volume 7)
    NOEL HERNANDEZ                  *
8                                   *
    * * * * * * * * * * * * * * * * *
9

10

            BEFORE:   The Honorable William G. Young,
11                       District Judge, and a Jury

12

13

14  APPEARANCES:

15          DAVID TOBIN and NANCY RUE, Assistant United
        States Attorneys, 1 Courthouse Way, Suite 9200,
16      Boston, Massachusetts 02210, on behalf of the
        Government
17

            LAW OFFICES OF PARTRIDGE, ANKNER &
18      HORSTMANN, LLP (By Peter C. Horstmann, Esq.),
        200 Berkeley Street, 16th Floor, Boston,
19      Massachusetts 02116, on behalf of the Defendant

20          GABRIEL HADAD and DEBORAH HUACUJA, Court
        Interpreters
21

072605.pf.txt

22

23

                                        1 Courthouse Way
24                                      Boston, Massachusett
s

25                                      July 26, 2005


                                                            2


1                    PROCEEDINGS - 3:30 P.M.

2

3            THE CLERK:  All rise.  Court is in session, pl
ease

4    be seated.

5            May I have the question.

6            THE COURT:  Yes.  Why isn't the answer yes, Mr
.

7    Tobin?  I mean, that's what you charged.  Of course he
has

8    to know in both cases.

9            Is there -- suppose, suppose they have a reaso
nable

10   doubt that he knew it was heroin.  Do either of these

11   charges survive?

12           MR. TOBIN:  Yes, your Honor, I believe they do
.

13           THE COURT:  Tell me.  Why?  How?

14           MR. TOBIN:  They have to -- he has to know tha

t he

15     is transporting a controlled substance.  He doesn't hav
e to

16     know that it is heroin.

17          THE COURT:  Well, he's certainly, he's certain
ly

18     going to be acquitted on the conspiracy.

19          MR. TOBIN:  Oh, I would respectfully disagree.

20          THE COURT:  You charged heroin.

21          MR. TOBIN:  The United States did charge heroi
n

22     because heroin is in fact what it was.  I believe he ha
s to

23     have knowledge that there is --

24          THE COURT:  What's your authority for that?

25          MR. TOBIN:  I don't have any authority right n
ow.

3

1          THE COURT:  No, I'm going to charge them what
he --

2     am I committing error here?

3          MR. HORSTMANN:  Absolutely not, your Honor.

4          THE COURT:  Especially with the sentencing

5     structure the way we have with mandatory minimums and a
ll

        6       different sentences for different drugs.  Take, take

        7       conspiracy, which is the easiest, at least for my analy
sis.

        8       It's got to be a specific intent here.  And the specifi
c

        9       intent is to enter into a heroin conspiracy.

        10              Now -- oh.

        11              (Whereupon the court interpreters entered the

        12      courtroom.)

        13              THE CLERK:  I forgot to wait for them.

        14              THE COURT:  I'm sorry.

        15              MR. TOBIN:  Oh, I'm sorry.  I should have wait
ed.

        16              THE COURT:  No, it's not -- I'm the one who's
at

        17      fault.  No, we started in your absence and I apologize.
   I

        18      do apologize.  The matter is of no moment because we ar
e

        19      talking about the law.

        20              Well, you brief it.

        21              Now, aiding and abetting, that's a little hard
er.

        22      You don't have any authority either, do you?  It's sort
 of

        23      left to my judgment.  It isn't left to my judgment, bec
ause

        24      I imagine there's law on this.  But it seems to me that

072605pf.txt

he

    25    has to share the same criminal intent as the offenders,
the

4

    1    other, Navarro, anyway, and they're swallowing pellets
of

    2    this stuff.

    3          Now, you can do that with heroin.  I think tha
t

    4    would be pretty tricky to do it with cocaine because th
e

    5    stuff will kill you if it -- it happens all the time yo
u

    6    say.

    7          MS. RUE:  It happens all the time.

    8          MR. TOBIN:  I just, I just sentenced a cocaine

    9    swallower 20 minutes ago.

    10          THE COURT:  Respectfully, Mr. Tobin, you didn'
t

    11    sentence him.

    12          MR. TOBIN:  I'm sorry.  I apologize.  I was pr
esent

    13    at the sentencing --

    14          THE COURT:  You urged a sentence.

    15          MR. TOBIN:  -- in the United States District C
ourt.

16    I apologize.

17         THE COURT:  All right, it seems to me that we've

18    got to know what it was here.  Not just that it was some

19    sort of drug.

20         Let's, let's look at the -- what's the specific,

21    before I commit error here, what's the specific charge on,

22    the importation of, what is the language of --

23         MS. RUE:  I believe it's 963.

24         THE COURT:  963?  18 U.S. 963?

25         MS. RUE:  21, your Honor.

5

1         THE COURT:  21 U.S.C. 963.

2         MS. RUE:  And I'm afraid I was in on another case

3    so I actually have that case's file in front of me.

4         THE COURT:  That's all right.  963.  Well, that's

5    just a general attempt and conspiracy.  Any person --

6         MS. RUE:  952 then.

7         THE COURT:  All right, we'll try that.

8          MS. RUE:  952, importation, your Honor.

9          MR. HORSTMANN:  (A) is Schedule I or II controlled

10    substances.

11          MS. RUE:  And since heroin is I and cocaine is II,

12    I believe if they believed it was either one.  I would love

13    an opportunity to do 15 minutes worth of research, your

14    Honor.

15          THE COURT:  No, I'll give you that opportunity.

16    Ten minutes of 4:00 I'll instruct them.  My intention is

17    to -- and I'll go look it up myself.

18          MS. RUE:  Thank you, your Honor.

19          MR. HORSTMANN:  Thank you, your Honor.

20          THE COURT:  Ten minutes of 4:00.  We'll recess.

21          MR. HORSTMANN:  Judge, may Mr. Hernandez just have

22    the note translated for him because I'm not sure he

23    understood --

24          THE COURT:  He certainly may.  Now, understand, the

25    conspiracy -- to me I see them differently.

0726O5pf.txt

6

1          MR. TOBIN:  Yes.

2          THE COURT:  So authority with respect to conspiracy

as well as authority with respect to the specific doing it.

3

4    Thank you.

5          MR. TOBIN:  Thank you, your Honor.

6          THE CLERK:  And you'll just wait -- all rise.

7          (Recess.)

8

9

10              PROCEEDINGS - 3:53 P.M.

11

12          THE CLERK:  Court is in session, please be seated.

13          THE COURT:  Well, Ms. Rue, what do you have?

14          MS. RUE:  Your Honor, First Circuit versus --

15          THE COURT:  Well, may I have it.  I would like the
actual language here.  Telling me about cases is going to be

16

17    less helpful than my reading them.

18          MS. RUE:  Okay.  Thank you, your Honor.

19          THE COURT:  I'm not against oral argument but this

20      is the type of thing --

21              MS. RUE:  And, your Honor, I would also submit from

22      the Ninth Circuit US v. Toliver, 331F.3d 423.

23              MR. HORSTMANN:  Judge, I have two First Circuit

24      cases here as well.

25              THE COURT:  Yes.  Do you have them?

7

1               MR. HORSTMANN:  Yes.

2               THE COURT:  May I see it.

3               MS. RUE:  And, your Honor, I would also submit US

4       v. Hussein.

5               THE COURT:  And now can you give me some help as to

6       where in Hussein?  The --

7               MS. RUE:  Your Honor, I believe it was the fifth

8       head note.  The reference is that the defendant need not

9       know specifically what the controlled substance is, only

10      that it is a controlled substance.  And in the Hussein case

11        he asserted that he did not know that it was CAT, was

12        unfamiliar with CAT.

13                THE COURT:  All right, let's see here.

14                And turning to your cases, Mr. Horstmann.  What's

15        the --

16                MR. HORSTMANN:  Unfortunately, your Honor, I didn't

17        get past the head notes, but I think the two head notes you

18        are dealing with are those that deal with constructive

19        amendment of indictments.

20                THE COURT:  Yes, that's --

21                MR. HORSTMANN:  And variance.

22                THE COURT:  Yes.  All right.

23                MR. HORSTMANN:  Those two First Circuit cases

24        clearly say that constructive amendment of the terms of the

25        indictment by the prosecution or the Court is per se

                                                                    8

1        unconstitutional.  Unconstitutional.  Excuse me.

2                THE COURT:  Yes, that was troubling to me.  But

3        your point is -- let's tease that out a little bit.

```
     4              On the, on the conspiracy -- none of these cas
es

     5       are conspiracy.  So, on conspiracy, Ms. Rue, I'm sticki
ng to

     6       my guns.  They have to know it's heroin.  But on the

     7       importation here, I'm much less certain on importation.

     8              And so your point is that if, having alleged

     9       heroin, which they clearly alleged, that's what they al
lege

    10       here, importation of heroin, they cannot now say any

    11       Schedule I or II controlled substance.

    12              MR. HORSTMANN:  Absolutely not, your Honor.  I

    13       think the indictment is clear, clear, it says heroin, i
n

    14       multiple places.  Even assuming, if this is not a

    15       constructive amendment of the terms, it's certainly

    16       prejudicial variance.  There's no notice to this defend
ant

    17       that this was going to be a cocaine, either conspiracy
or

    18       prosecution for the substantive possession of cocaine.
  So I

    19       think under either theory, although I think it's more

    20       closely a constructive amendment, I don't see how the C
ourt

    21       can answer the question no.

    22              MS. RUE:  Your Honor, may we be heard?
```

23          THE COURT:  Yes.

24          MS. RUE:  I would like permission to come back to

25      the question of conspiracy.


                                                    9


1           With regard to the constructive amendment, your

2       Honor, the Ninth Circuit case that I presented deals

3       especially with that and in that case, your Honor --

4           THE COURT:  I know, but I'm not persuaded by the

5       Ninth Circuit, candidly.  I've looked at the case.  I'm not

6       persuaded.

7           MS. RUE:  May I address with regard to conspiracy

8       generally, your Honor?

9           THE COURT:  Go ahead.

10          MS. RUE:  Your Honor, when you look at the

11      conspiracy statute itself, 963, the words in that statute, a

12      person who attempts or conspires to commit any offense

13      defined in this subchapter shall be subject to the same

14      penalties as those prescribed for the offense, the

15      commission of which was the object of the attempt or the

0786-85p.txt

e

16      conspiracy.

17              Therefore your Honor, if the law covers the

18      underlying offense then the fact that they conspired to do

19      it, they had an agreement to violate the underlying off ense.

20      If you don't have to be more specific in the underlying

21      offense, your Honor, I respectfully submit you don't ha ve to

22      be --

23              THE COURT: But my problem is the actual langu age

24      of your indictment. If I were to adopt that -- and

25      remember, you accepted, without cavil here, the excisio n of

10

1       the business that he had cocaine in his wallet. We

2       stipulated, no, it's an unrelated offense. If he's a

3       full-service drug dealer here why that would be probati ve it

4       would seem to me. This is a person who knows how to ge t

5       cocaine. Maybe he knows how to deal cocaine. But no, out

6       that went without any objection from the government bec

ause

7        we were talking about heroin here.

8                MS. RUE:  Your Honor, I don't believe that tha
t was

9        the basis of our not objecting.

10               THE COURT:  No, but whether or not it was the

11       basis, that's the record here.  That's what happened in
  the

12       case.  The whole focus has been on this heroin.

13               It seems to me this.  I'm sticking to my guns
on

14       conspiracy.  Conspiracy is a specific intent crime.  I,
  I

15       will let it go as to the doing of it, saying that it ha
s to

16       be heroin or cocaine, it isn't just any controlled

17       substance.  And one of the reasons I'm doing it, let's
be

18       very clear, one of the reasons I'm doing it is that I a
m,

19       I'm doing it that way, is that I am gravely troubled by

20       expanding the indictment.  Therefore, if we get a verdi
ct of

21       guilty on Count 1, not guilty on Count 2, no amount of

22       heroin, because they, they had a reasonable doubt as to

23       whether it is heroin, Question 4 has nothing to do with

24       this, then, then we'll be in a position, I think that's

25      fairest to the government, because then we'll be in a

11

1       position to address this issue of fatal variance, which I

2       take very seriously.  I think maybe you have expanded this.

3            Now, if you get a guilty on both I think there's,

4       no error has been made; if it's a not guilty on both, we

5       don't have the issue.

6            That's how I'm going to answer the question.  Bring

7       the jury in.

8            MR. HORSTMANN:  Judge, I, I object.  I think you're

9       sort of experimenting with the jury.  And you run the risk

10      when you do that that, you know, if they convict on one they

11      decide that they're going to convict on all.  And I think

12      that's the risk you're taking here.  I think the law is

13      quite clear, this is a constructive amendment or a

14      prejudicial variance.

15            THE COURT:  I haven't allowed you to -- strike

0726-35 p f excerpt

16      that.  I am not overruling those arguments.  I'm procee
ding

17      in this fashion.

18              All right, bring the jury in.

19              (Pause in proceedings.)

20              MS. RUE:  Your Honor?

21              THE COURT:  Yes.

22              MS. RUE:  Would the Court consider giving us

23      additional time to brief this matter before tomorrow

24      morning?

25              THE COURT:  No, I'm going to answer the questi
on.


                                                            12


1       The jury needs an answer to the question and I'm going
to

2       answer them.

3               Now, once I send them out it sort of moots the

4       issue, but you might well research it because if they c
ome

5       back with a related question I could address it further
.

6       But they will have to come back with some related quest
ion.

7               MS. RUE:  Thank you, your Honor.

8               (Further pause in proceedings.)

9             THE CLERK:  All rise for the jury.

10             (Whereupon the jury entered the courtroom at 4:03

11     p.m.)

12             THE CLERK:  Court is in session, please be seated.

13             THE COURT:  Let the record show that --

14             A JUROR:  We're missing someone?

15             THE COURT:  Oh, we are?

16             A JUROR:  No, they're over there.  Okay.  I'm

17     sorry.

18             THE COURT:  No, never hesitate.  You did just

19     right.

20             Let the record show that the twelve deliberating

21     jurors and the two alternates are present in the courtroom.

22             I've received the following questions which I'll

23     read:

24             For either charge does the defendant have to have

25     knowledge of what specifically is coming into the country?

13

1     Does he have to know what drug it is?  Is the charge

2     specifically heroin or any drug?

3               Are those the questions, Madam Forelady?

4               THE FORELADY:  Yes, your Honor.

5               THE COURT:  Are those the questions, ladies and

6     gentlemen of the jury?

7               THE JURY:  Yes.

8               THE COURT:  To those questions I make these

9     answers.  That's the formal way of doing it.

10               You'll see I didn't call you right back in.  And

11     that's because this is a very good question.  To your

12     questions, I make the following answers.

13               Look at Question 2 first.  Question 2 deals with

14     conspiracy.  In order for there to be a conspiracy there has

15     to be an agreement as I have already charged you, and there

16     has to be a specific intent, a specific goal of the

17     agreement.  As the government has charged it here, the

18     specific goal of the agreement as they charged it is to

19     import heroin.  So that's got to be the deal.  The

20     government has to prove that his agreement was with one or

0726059.5.txt

21    more of these other folks to import heroin.  Not any dr ug,

22    heroin.

23            As to the first question, the answer is a litt le

24    more complex.  The government charged the importation o f

25    heroin.  But when you look at the underlying statute, t he

14

1    law, it talks about the importation of any substance un der

2    Schedule I or II.  Now, that's not any drugs.  That's h eroin

3    or cocaine.  So, for that charge, if he aided or abette d

4    that charge, or he did conspire but his conspiracy was

5    either heroin or cocaine, then you might find him guilt y of

6    that charge.

7            Assume that you have a reasonable doubt as to

8    whether he knew it was heroin, but you are satisfied be yond

9    a reasonable doubt that he either aided and abetted Nav arro

10   and Mercedes in bringing in a controlled substance that was

11    either heroin or cocaine, or that he conspired with them to

12    bring in a controlled substance that was either heroin or

13    cocaine.  Then you could find him guilty on Count 1 but not

14    guilty on Count 2.  Don't answer Count 3, it only asks you

15    about quantities of heroin, and you haven't asked anything

16    about Question 4.

17              Again I say to you, I'm just answering your

18    questions.  A logical verdict in this case is that Mr.

19    Hernandez is not guilty on both counts or that he is guilty

20    on both counts or he is not guilty on the first and guilty

21    on the second.  In other words, it's what you determine

22    generally.  I'm not changing anything that I said.

23              That's my answer to your question.  You may --

24    questions.  You may retire and continue your deliberations.

25              THE CLERK:  All rise for the jury.


                                                            15


1              (Whereupon the jury left the courtroom at 4:08

```
 2    p.m.)

 3              THE COURT:  We'll recess.

 4              (Recess.)

 5

 6                  PROCEEDINGS - 4:53 P.M.

 7

 8              THE CLERK:  All rise.  Court is in session, pl
ease

 9    be seated.

10              THE COURT:  I have two other questions which y
ou've

11    seen.  The questions are sufficiently similar and given
 the

12    hour I'm not going to answer them, and instead I'm goin
g to

13    send the jury home.

14              If anyone wants to brief any of these issues,
I

15    want briefs before nine o'clock tomorrow morning.  Ms.
Smith

16    will see that I get them.  I will have reviewed them.
I'll

17    answer the question at nine o'clock, questions at nine

18    o'clock and we'll go from there.

19              All right, bring the jury in.

20              (Pause in proceedings.)

21              THE CLERK:  All rise for the jury.
```

22          (Whereupon the jury entered the courtroom at 4
:55

23     p.m.)

24          THE CLERK:  Court is in session, please be sea
ted.

25          Let the record show that the twelve deliberati
ng

16

1     jurors and the two alternates are present in the courtr
oom.

2          I have received two additional questions.  But
 in

3     view of the hour, and because I believe I ought not cro
wd

4     people with respect to a verdict, I told you we would s
top

5     at 5:00.  We're going to stop at 5:00.  I will answer t
he

6     questions, but I'll answer them at nine o'clock tomorro
w

7     morning.  And so I brought you in to give you your

8     instructions now that we're going to disperse.

9          I can no longer say keep your minds suspended

10    because you twelve deliberating jurors are well into yo
ur

11    deliberations concerning the substance of these charges
.

12     That fact makes so vitally important the remainder of my

13     cautions.  No doing any independent research about this

14     case.  The case is all before you now on the evidence.

15          Don't talk to anyone about the substance of this

16     case in any way, shape, manner or form.  Don't the

17     deliberating jurors talk to the alternates or the alternates

18     to the deliberating jurors or the alternates to each other

19     about the substance of the case.

20          Once I let you go now, since the alternates will

21     all go with you, don't keep on talking about the case.  When

22     you come in in the morning the alternates will go to the

23     jury room and be with you.  Don't you talk about the case.

24     At nine o'clock I will bring you into the courtroom, and so

25     vital is this that on your oath as jurors I will ask you

17

1     whether you have obeyed my instructions.

2          The integrity of this whole process now depends

upon you keeping the deliberations, whatever they may be,

3

4          entirely to yourself.  No one is to be consulted.  Don't

talk to anyone about the substance of the case.

5

6          I have seen no press about this case, but

7          frequently when a case is under deliberations the press

8          wants to run something about that.  Should there be anything

in the press, radio, television, newspaper, you are charged,

9

10         and the alternates, too, you are charged just with turning

11         the channel or flipping the page.  All the information about

12         the case is the evidence in the case, and that's before you.

13         Now, with those instructions said, this is a

14         typical occurrence.  We frequently let juries separate,

15         deliberating jurors, and then return on the following day.

16         It happens all the time.  My best advice to you now is since

17         you can't talk about it, just put these things out of your

18         mind, get a good night's sleep, come back tomorrow morning,

19      I'll answer the questions and you can go on deliberatin
g.

20              The jury may stand in recess until 9:00 a.m.

21      tomorrow morning and I'll remain on the bench.

22              THE CLERK:  All rise for the jury.

23              (Whereupon the jury left the courtroom at

24      4:59 p.m.)

25              THE COURT:  Please be seated.  I invite furthe
r


18


1       briefing both as to this knowledge business and as to t
he

2       business about a variance or an expansion of the charge
.  I

3       remain on the bench simply to give you tentative answer
s to

4       these questions, but I won't take argument now because

5       you're going to get a chance to brief it, but also to g
ive

6       you my thinking after we separated.

7               I really think that Blakely and Booker changed
the

8       calculus here, and so citation to these earlier cases I

9       don't think is particularly helpful.

10              Second --

0726-05 pf text

```
11              (Whereupon the Court and the Court Reporter

12        conferred.)

13              THE COURT:  I faced in recent months, last yea
r, a

14        case United States v. Pacheco.  He was one of the defen
dants

15        in a large drug conspiracy in which the principal defen
dant

16        was a fellow by the name of Yeje-Cabrera.  I believe I
wrote

17        on this, not that that's significant.  The facts are si
milar

18        but somewhat different in the sense that I had given a

19        partial directed verdict and then realized that I had

20        forgotten a piece of the government's evidence and I to
ok it

21        away.  Nothing changed in the -- well, I won't argue th
e

22        case, but appellate counsel, Kimberly Homan, had vigoro
usly

23        argued both before me and then appealed to the First Ci
rcuit

24        that when I took away the partial directed verdict mid
trial

25        after jeopardy attached, I had expanded the government'
s
```

19

1    proof.  I simply cite that to you all because it's a place I

2    have told the law clerks to go look, look at the briefs in

3    the court of appeals.  It's the last time I touched this

4    variance issue.  I resolved against Mr. Pacheco in that

5    case.  And I believe I did write on it, and so we're looking

6    that up.

7         Now, to the specific questions.  Subject to your

8    briefing, I would answer under the second charge must both

9    parties to the agreement be knowledgeable about the type of

10    drug for a conviction.  Consistent with how I view

11    conspiracy, the answer to that question is yes.

12         I'm a little unclear about the first one.  Is it

13    sufficient for a conviction that only Mr. Hernandez knew

14    what they agreed to import?

15         Well, on an aiding and abetting theory on Count 1

16    the answer to that is yes.  On a conspiracy charge, they

17    would have to believe that, the answer is no, they would

18    both have to agree to a conspiracy to import either her
oin

19    or cocaine.  That would have been my answer.

20            I look forward to whatever you tell me and we'
ll

21    recess until nine o'clock tomorrow morning.  We'll rece
ss.

22            (Adjournment.)

23

24

25

                                                    20

1                 C E R T I F I C A T E

2

3

4            I, Donald E. Womack, Official Court Reporter f
or

5    the United States District Court for the District of

6    Massachusetts, do hereby certify that the foregoing pag
es

7    are a true and accurate transcription of my shorthand n
otes

8    taken in the aforementioned matter to the best of my sk
ill

9    and ability.

10

11

12

13

14
                         _____

                            DONALD E. WOMACK

15
                      Official Court Reporter

                         P.O. Box 51062

16
             Boston, Massachusetts 02205-1062

                  womack@megatran.com

17

18

19

20

21

22

23

24

25